The United States Mutual Accident Association of the City of New York v. Kittenring.

| | 22 | 257 |
| --- | --- | --- |
| d36 | 217 |

1. Insurance Agent—Estoppel.
When it is known to the assured that the agent is only authorized to solicit insurance and receive applications, which are to be forwarded to the company for its acceptance or rejection, the agent has no implied authority to bind the company by a contract of insurance, and it is not estopped from showing the restricted character of his authority.

2. Same—Evidence.

Where the agent was merely the soliciting agent of the company, with authority to receive applications and forward the same to the company for its approval or rejection, and the printed application advised the assured of the limitation of the agent's authority, parol evidence for the purpose of showing that he waived a condition and entered into a contract whereby the insurance was to be in force from and after the date of the application is inadmissible.

*Appeal from the District Court of Arapahoe County.*

Action to reform policy of accident insurance and for judgment upon policy as reformed. Judgment for plaintiff; defendant appeals.

On the 27th day of October, 1890, the appellant, The United States Mutual Accident Association of the city of New York, was doing a general accident insurance business, with its principal office in the city of New York. Upon that day Pearce & Calvert were the general agents of the company in the city of Denver, and one J. F. Huntington was a special agent, employed to solicit and forward to the home office applications for insurance.

Upon the date mentioned Huntington took the application of appellee, Mary A. Kittenring, and mailed the same to the New York office. This application contained the following, among other provisions: "I also agree that the association shall not be liable for any bodily injury or death happening prior *to the receipt* and *acceptance* of this application and the membership fee by the secretary in New York, and that the association shall not be bound by or responsible for assessments or dues paid to any one except the secretary in New York or to a duly authorized agent delivering receipt for same signed by the secretary."

The foregoing application was received at the New York office on October 30th, and placed on the unadjusted file of the company, awaiting further information. The application was acknowledged by James R. Pitcher, secretary and general manager of the company, in the following letter, dated October 31, 1890: "I have received from you application

of Mary A. Kittenring, of Denver,—occupation given as canvasser. For what is this applicant a canvasser? Please give also the name of the firm by which she is employed. The application will be held on our unadjusted file awaiting your reply."

To this letter the following answer was returned by Mr. Huntington:

"Mary A. Kittenring does not confine herself to one line, nor does she work for any one. She was working portraits when I wrote her up, but thought of taking something else for holidays. She buys when she can first and makes her own prices. Seems to be quite a business turn and claims to be making money."

On November 12th Pitcher replied to the Huntington letter as follows:

"I am in receipt of your reply to our letter of the 31st ult., regarding the occupation of Mary A. Kittenring. However, before accepting her application, we wish to be informed as to the amount of her average income. We seldom accept the applications of women, and it is only in very favorable cases that we make exceptions to this rule.

"I am inclined to think, even if she is a preferred risk, she should be limited to a half indemnity policy, but if her income equals $25 per week, we will consider her application for a full preferred policy.

"In the meantime we will continue to hold the application on our unadjusted file."

The correspondence continued in this strain until the middle of the month of December, when the whole matter was referred to one F. A. Nims, who had in the meantime succeeded Pearce & Calvert as the general agent of the company in Denver. On December 15th, Mr. Nims reported favorably upon the application. This letter was received in New York on the 19th day of December and a policy issued on that date, by its terms to be in force from and after the date of issuance.

On December 2, 1891, appellee sustained the injury for

which benefits are sought to be recovered in this action. Sometime during the latter part of the month of December, 1890, one E. M. Felix took part in the negotiations. The evidence shows that Felix sometimes assisted Huntington in his business of soliciting insurance, but that he acted in the correspondence as the friend and agent of Mrs. Kittenring and lived in the same house with her and her husband.

Twenty-eight days after the injuries were received, to wit, on December 30, 1890, Felix wrote Pitcher as follows: "Your notice for $2 premium call, on membership No. 52077, at hand. I am a sub-agent for Mr. Huntington or rather was at that time, in last October and have in hand payment to me $4 by said member, Mrs. Kittenring, for dues from October. And as Mr. Huntington cannot be found the policy I suppose is lost, and the lady is going to leave town on or about 10th of January, and wants her policy. If I cannot get it I will have to return her the money and she will insure in another company. Hoping you will give this your immediate attention. * * * Can you send another policy if this one cannot be found?"

This letter was followed by another from Felix, dated January 8th, 1891, as follows: "I received a duplicate of policy Number 52077, for Mrs. Mary A. Kittenring; but as it is dated on the 19th of December, she will not accept it. She thinks that it is a fraud policy, and says that no insurance company would be that long getting a policy rote up.

"I return to you your duplicate, as it is no good to me, and she will not except it. She says that when she gets a policy dated at least ten to twelve days after application was sent, she will think that there is a fraud.

"Now, this woman is rather on the crank order, and, as she has considerable influence over a great many people, I leave it all to you. You can act on your own judgment. I still have the money that she paid to me—$9.00 in all."

It will be noticed that in these letters Felix concealed the fact that Mrs. Kittenring had suffered an injury on December 2d. Some days after these letters were written Felix

notified the company of the accident, stating that the same occurred on December 22d instead of giving the true date, the 2d inst. This was the first notice of the accident received by the company.

At the trial it was claimed that Huntington stated to Mrs. Kittenring at the time her application was made that the insurance would be in force from and after the time at which the application was received by him, and oral testimony was admitted to show that such a statement was in fact made by him. Upon this evidence the policy was reformed, so as to bear date and be in force from the time of the application, to wit, October 27, 1890, and judgment was rendered on the reformed policy in favor of Mrs. Kittenring for the sum of $2,650 and costs. To reverse this judgment, the cause is brought here by appeal.

Messrs. MORRISON, DE SOTO & MACON, for appellant.

No appearance for appellee.

CHIEF JUSTICE HAYT delivered the opinion of the court.

At the trial an attempt was made to show that at the time of taking the application from Mrs. Kittenring, Huntington, the solicitor, gave a receipt by the terms of which the insurance, if accepted by the company, was to be in force from the date of the application. Such receipt was not produced upon the trial, but a printed blank was introduced, which was described as quite similar to the one alleged to have been executed. This evidence will not avail the plaintiff in this case for two reasons: *First*, the receipt is not sufficiently identified; *second*, it is expressly stated therein that it will not be binding upon the company unless countersigned by Pearce & Calvert, its general agents, and it was never so countersigned.

Evidence was introduced for the purpose of showing that the solicitor assured Mrs. Kittenring orally that the policy would be issued and of force from the date of the application,

but the letter of Felix, written on the 8th of the following January, at the instance and request of the insured, shows that this claim was in fact an afterthought, for in this letter he declines on behalf of Mrs. Kittenring to accept a duplicate of the policy because of its date, and quotes her as saying: "As it is dated on the 19th of December I will not accept it. I think that it is a fraud policy, and that no insurance company would be that long in getting a policy wrote up."

In the written application made by Mrs. Kittenring, she agrees that "the association shall not be liable for bodily injury prior to the receipt and acceptance of this application and the membership fee by the society in New York." This is an express stipulation that the policy shall only take effect from the time of the acceptance of the application by the secretary of the company. As we have stated, the attempt was made in the court below to vary this provision by proof of oral statements made by the solicitor at the time the application was received by him. While such proof is far from satisfactory, yet in view of the fact that the trial court found it sufficient to warrant a decree, it becomes necessary to determine the admissibility of such evidence. Without doubt the tendency of modern authority is to hold insurance companies responsible for the representations of their agents, wherever the assured in the exercise of a reasonable caution has been misled by such agents, and it seems to be now well established by authority that an agent, appointed by an insurance company and intrusted with blank policies, which he is authorized to issue under certain conditions, if he by his conduct leads the public to believe that he is authorized to waive the conditions, the company is bound by the acts of such agent, where the proof shows that the company by acquiescence, or by its conduct, has induced the belief that the agent has such power, but this rule cannot be extended so as to interfere with the right of parties to contract, and where, as here, it is known to the assured that the agent is only authorized to solicit insurance and receive applications, which are to be forwarded to the company for its acceptance or rejection, the

agent has no implied authority to bind the company by a contract for insurance, and the company is not estopped from showing the restricted character of such authority. *Fleming v. The Hartford Fire Ins. Co.*, 42 Wis. 616 ; *The Winnesheik Ins. Co. v. Holzgrafe*, 53 Ill. 516 ; *Ins. Companies v. Sorsby*, *etc.*, 60 Miss. 302 ; *Walker v. The Farmers' Ins. Co.*, 51 Iowa, 679 ; *Atkinson v. The Hawkeye Ins. Co.*, 71 Iowa, 340 ; *Ins. Co. v. Minnequa Springs Imp. Co.*, 100 Pa. St. 137 ; *Stockton v. Firemen's Ins. Co.*, 33 La. 577.

We have not overlooked the case of *Insurance Co. v. Wilkinson*, 13 Wall. 222, but we think the foregoing statement of the law is not in conflict with any principle therein announced. In that case the agent had inserted in the application untruthful answers in reference to the cause of death of a parent of the insured. He derived the information upon which he did this from sources other than from the applicant, and the court held that in so doing and in filling up the application the solicitor was acting for the company, and not as the agent of the insured, and that such statements, although untrue, did not invalidate the policy.

Oral evidence is allowed in such cases, not to contradict the written application, but for the purpose of showing that the statement is not the statement of the insured, and that the company is estopped by the conduct of its agent from setting up that the representation is that of the assured. This is quite different from allowing oral evidence for the purpose of varying the terms of a written contract.

The uncontradicted evidence in this case shows that Huntington was merely a soliciting agent of the defendant company, authorized only to receive applications and forward the same to the company for its approval or rejection, and the stipulation in the printed application made by Mrs. Kittenring advised her of the limited scope of the agent's authority in the premises. In view of these circumstances, the admission of oral evidence for the purpose of showing that the agent waived the condition and entered into a binding contract on the part of the company, whereby the insurance was

to be in force from and after the date of the application, was error.

In view of the important principle involved in this case, it is to be regretted that the court has not had the benefit of an argument on behalf of appellee.

For the reasons given the judgment will be reversed.

*Reversed.*