No. 27,002.

G. A. LAMB, *Appellee,* v. THE MECHANICS INSURANCE COMPANY OF PHILADELPHIA, *Appellant.*

SYLLABUS BY THE COURT.

INSURANCE—*Application—Loss After Being Mailed by Soliciting Agent—Liability of Company.* The facts considered in an action against an insurance company for a sum of money within the amount of insurance stated in an application for insurance which was taken by a soliciting agent and duly mailed to the company, but which was lost in transit, and *held,* the company is not liable.

Appeal from Butler district court; GEORGE J. BENSON, judge. Opinion filed January 8, 1927. Reversed.

*Ralph T. O'Neil, John D. M. Hamilton,* both of Topeka, and *J. B. McKay,* of El Dorado, for the appellant.

*J. M. Pleasant,* of El Dorado, for the appellee.

The opinion of the court was delivered by

BURCH, J.: The action was one by an applicant for insurance to recover the loss sustained on account of destruction of property by fire. No policy was issued, and in its original form the petition predicated recovery on an oral statement of the soliciting agent that plaintiff was insured from the time the application was signed. The petition was amended to state a cause of action based on negligence of the company. The negligence charged was that the agent did not notify plaintiff that he had no communication from the com-

pany respecting the application, had not received a policy, and had not received advice from the company of either acceptance or rejection of the application. The amended answer denied negligence on the part of the company, and alleged that if plaintiff was damaged because of lack of information respecting the fate of his application, his own conduct placed him in fault in the matter. The court found the company was negligent, plaintiff was not negligent, and rendered judgment for a sum within the amount of insurance applied for. The company appeals.

The application was dated September 13, 1924, and was for insurance on farm property. The agent was a soliciting agent, had no authority to bind the company on farm property, and the application contained a plainly printed statement that he had no such authority. The application also contained a statement that it should not be binding on the company until it was accepted in writing or a policy was issued. Plaintiff did not read the application, and did not know of these provisions, but he could read, and nothing prevented him from reading the application. He was told it was necessary for the agent to send the application to the home office of the company, which would issue a policy and send it to the agent within two or three days. Otherwise plaintiff was in fact ignorant of the scope of the agent's authority. When the application was signed, plaintiff inquired when the insurance would become effective, and the agent replied it would become effective immediately. Attached to the policy was a premium note prepared by the agent which bore the same date as the application. Plaintiff requested the agent to keep the policy for him until he called for it, and the agent agreed to do so. On the day the application was signed, the agent deposited it in the post office in an envelope addressed to the company, postage paid. Plaintiff was the agent's milkman, and delivered milk to the agent's home nearly every day. Every week or two plaintiff would collect from the agent at his office for milk delivered. Subsequent to September 13 this practice continued, and plaintiff frequently saw the agent at his home and office, but nothing was said by either of them touching the subject of plaintiff's insurance. On December 10, 1924, the property burned, and on investigation it was discovered the application had been lost in the mail, and the company had never heard of it.

Leaving at one side for the present the fact the agent advised

plaintiff the insurance became effective immediately and a policy would be issued within two or three days, there is no sound basis for the judgment.

The agent exercised his authority to take the application and place it in course of transmission to the home office. His immediate authority was then exhausted. He had no function to perform on behalf of the company until he received from it a policy to be delivered, a rejected application with note attached to be returned, or some other commission to be executed relating to the insurance. For some unknown reason the application did not reach the home office. That office had no occasion to communicate with the agent respecting an application which it did not know existed. Its silence was without fault, and did not involve delay. The agent was not guilty of delay in forwarding the application, the home office was not guilty of delay in approving or rejecting the application, and cases dealing with liability consequent upon delay are not helpful. The court found it was the custom of the company to accept or reject applications promptly, usually within twenty-four hours after receiving them. Because of this practice, the company had no occasion to instruct its agents that if they did not hear from the home office respecting forwarded applications, they should notify applicants of the suspense, and the court knows of no peremptory rule of law requiring such notice.

The plaintiff was actor. The application constituted his offer to enter into a contract of insurance. He would remain without insurance unless the company manifested its assent. He had as much interest as the company in knowing if there was to be insurance. He appointed the company's agent his agent to receive and keep the policy for him, and he was interested in knowing if that relation came into existence. Throughout a period of nearly three months he had frequent opportunity to ask for the information which the court held it was the duty of the company to volunteer. Had he sought information, he would have learned the facts, and could have procured a policy from the company if it approved the risk, or could have applied for insurance elsewhere; and in the absence of ground of belief induced by the company that his application had been accepted, he was not in position to charge the company with sole responsibility for the fact that his property was uninsured, or indeed, any responsibility.

The subject of inquiry by an applicant concerning the status of his application for insurance was discussed in the case of *Winchell v. Iowa State Insurance Co.*, 103 Ia. 189. In that case an application for insurance with premium note attached was rejected, and was returned to the soliciting agent, White, who failed to notify the applicant. In denying recovery for a sum within the amount of insurance applied for, the court said:

"The plaintiff has failed to show that the defendant knew, or had any reason to know, that he relied upon the belief that his application had been accepted. The defendant had promptly returned the application and note, when rejected, to White, with the evident intention that he should inform the plaintiff of what had been done. It may be conceded that it was a duty which White owed to the defendant to give that information; but the defendant and the plaintiff were alike interested in making the contract, and it was as much the duty of the latter to inquire whether it had been entered into as it was the duty of the former to give that information. The plaintiff admits that he was with White eleven days, and again more than two months, after the application was delivered, and yet claims that he did not make any inquiries with respect to the policy. He does not claim to have been misled by anything which was done or said by the defendant or White, excepting the statements of the latter in regard to the effect of the application and note, to which we have already referred." (p. 194.)

The concluding portion of the quotation from the opinion in the Winchell case brings up the subject, consideration of which was postponed—the bearing upon the relation of the parties of the agent's statement that plaintiff's insurance would take effect immediately and a policy would be issued within two or three days.

In the Winchell case, the agent told the applicant his insurance would take effect at noon of the day the application was signed. As in this case, the agent had no authority to make contracts for the company, and made no representation respecting contents of the application, which the applicant did not indicate he desired to read. The court held it was not the duty or within the power of the agent to construe the application and premium note, or to declare their legal effect, and thus create liability on the part of the company. This is necessarily so, because an agent may not accomplish by indirection what he could not do directly, and the law on the subject is too well settled to require citation of authority.

In this instance, no matter what plaintiff believed, he was charged with knowledge that the agent could not make a contract of insurance to begin on the day the application was signed, or on any

other day. The application informed him the agent could not bind the company with respect to the class of property he proposed to insure, informed him the company would not be bound until the application was accepted in writing or a policy was issued, and it is not material that plaintiff did not read the application. (*Pickett v. Insurance Co.*, 39 Kan. 697, 18 Pac. 903.) The statement that the policy would be issued and sent to the agent within two or three days from the time the application was sent in, belongs in the same category with the statement that the insurance became effective immediately, and may not be considered as coming from the company. The result is, plaintiff knew he was not insured, and could not be insured, without positive action of the home office; and the agent's unauthorized statements were ineffectual either to form a contract or to furnish a foundation for a charge of negligence.

Plaintiff cites the decisions of this court in which it has been held that, for the purpose of taking and transmitting an application for insurance, a soliciting agent has all the authority possessed by his principal. Those decisions are not pertinent, because integrity of the application is not disputed. Plaintiff lays stress on the fact that he executed a premium note attached to the application and dated the day the application was signed. The bearing of the specific fact on liability of an insurer is discussed in the case of *Miles, Adm'r, v. National Union Fire Ins. Co.*, 201 Ky. 179. The headnote reads:

"Applicant for fire insurance was bound by a statement in the application blank that no insurance was to become effective until the policy was issued and delivered, though he did not read the application, and he could not rely on oral statement of agent the property was insured, or that he would provide insurance, even though a note for the premium was given the agent."

The court concludes there was no contract of insurance, and under the circumstances liability may not be imposed on the company.

The judgment of the district court is reversed, and the cause is remanded with direction to enter judgment for the defendant.